CORN et al., Appellees,

v.

WHITMERE et al., Appellants.

[Cite as *Corn v. Whitmere,* 183 Ohio App.3d 204, 2009-Ohio-2737.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2008 CA 86.

Decided June 5, 2009.

Jeffrey E. Richards, for appellees.

Laura G. Harrelson and Rachael L. Rodman, for appellant AT & T Teleholdings, Inc.

Steven O. Dean, for appellant Henry D. Whitmere.

WOLFF, Judge.

{¶ 1} AT & T Teleholdings, Inc. ("AT & T"), appeals from a judgment of the Greene County Court of Common Pleas, which dismissed its cross-claim against Henry Whitmere with prejudice, based upon the two-year statute of limitations for personal injuries in R.C. 2305.10. Whitmere filed a cross-appeal challenging the trial court's failure to dismiss Joseph Corn's claims against him with prejudice. The procedural history relevant to this direct appeal and cross-appeal follows.

{¶ 2} On August 24, 2004, Joseph Corn ("Corn"), AT & T's employee, was injured in the course of his employment as a result of a collision with a vehicle driven by Whitmere on Treibein Road in Greene County, and on August 23, 2006, Corn and his wife, Lisa Corn, filed a complaint for personal injuries against Whitmere and Erie Insurance Company, which insured the Corns' vehicle. On May 3, 2007, the trial court granted Erie Insurance Company's motion for summary judgment, finding that Corn had no underinsured-motorist claim.

{¶ 3} On August 8, 2007, the Corns filed an amended complaint, joining AT & T as a defendant. AT & T, as a self-insured employer, provided workers' compensation benefits to Corn. On September 10, 2007, AT & T filed an answer, counterclaim, and cross-claim.

{¶ 4} In May 2008, AT & T filed a motion for partial summary judgment, asserting that it is a statutory subrogee of Corn and is "entitled to judgment as a matter of law that its statutory right to recover the amounts that it has paid to, or on behalf of, Joseph Corn is enforceable against Whitmere and/or any recovery that the Corns may obtain from Whitmere in this action." Whitmere also filed a motion for summary judgment, arguing that the Corns "failed to obtain service on Defendant Whitmere within the one year commencement period of Civil Rule 3(A)." Whitmere further argued that "AT & T has never obtained service on Defendant Whitmere," and that "there is no evidence [that] service by publication ever occurred."

{¶ 5} Whitmere opposed AT & T's motion for partial summary judgment, arguing that AT & T did not support its motion with proper evidentiary materials. AT & T opposed Whitmere's motion for summary judgment, arguing that it properly served Whitmere with its cross-claim. Whitmere subsequently moved to strike AT & T's notice and affidavit. The Corns opposed Whitmere's motion for summary judgment in June 2008, arguing that Whitmere participated in the litigation and that their amended complaint extended the time within which to obtain service upon Whitmere, pursuant to R.C. 2305.19, "the savings statute." Whitmere replied, citing *Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 114 Ohio St.3d 141, 2007-Ohio-3762, 870 N.E.2d 714, for the proposition that he did not

waive the affirmative defense of insufficiency of service by participating in the litigation.

{¶ 6} In July 2008, the trial court issued a "Notice to Plaintiffs of Court's Intention to File a Judgment Entry Dismissing the Complaint without Prejudice, otherwise than on the Merits Pursuant to Civ.R. 41(B)(1), and Order to Plaintiffs to Show Cause." Attached to the notice is a proposed judgment entry that provides, "Plaintiffs have attempted to commence but have not commenced this action against defendant Whitmere." The Corns responded to the notice, again arguing that the savings statute tolled the limitations period in which to serve Whitmere to one year from the date the Corns filed their amended complaint.

{¶ 7} Whitmere filed a motion to dismiss all claims against him with prejudice "for failure to obtain service of process and to properly commence claims * * * within the times allowed by the applicable statute of limitations, Ohio Rule of Civil Procedure 3(A) and Ohio Revised Code § 2305.19."

{¶ 8} On August 26, 2008, the trial court referred Whitmere's motion for summary judgment to the magistrate for decision. The magistrate denied Whitmere's motion for summary judgment against the Corns on the merits, but he granted the motion to the extent that it sought dismissal of the Corns' amended complaint otherwise than upon the merits and without prejudice. The magistrate dismissed the Corns' amended complaint without prejudice. The magistrate denied Whitmere's motion against AT & T, determining that AT & T's cross-claim was filed on September 10, 2007, and that AT & T had time to commence its action within the one year permitted by Civ.R. 3(A). On September 4, 2008, Whitmere filed objections to the magistrate's decision. AT & T opposed Whitmere's motion to dismiss and his objections to the magistrate's decision. Whitmere replied.

{¶ 9} On September 19, 2008, the trial court issued a judgment entry adopting the magistrate's decision on Whitmere's motion for summary judgment against Corn and a judgment entry granting Whitmere's motion for summary judgment against AT & T.

{¶ 10} The trial court overruled Whitmere's objections regarding the magistrate's decision to dismiss the Corns' complaint against Whitmere without prejudice. The court further "modifie[d] the magistrate's decision as to the AT & T Cross–Claim against Whitmere and dismisse[d] the Cross–Claim against Whitmere with prejudice," noting that in doing so, the court did not extinguish AT & T's statutory right of subrogation to recover from Corn to the extent that Corn may recover from Whitmere, but in an amount not to exceed the worker's compensation benefits that AT & T paid to or on behalf of Corn.

{¶ 11} Regarding Whitmere's objection to the magistrate's failure to dismiss AT & T's cross-claim, the trial court noted that in his motion for summary judgment, "Whitmere did not argue that AT & T failed to comply with the Statute of Limitations as a reason for seeking summary judgment against AT & T on its Cross–Claim. Whitmere argued only that AT & T failed to obtain service of the Cross–Claim upon Whitmere. Consequently the Magistrate did not decide the Motion for Summary Judgment on the basis of the statute of limitations defense pleaded by Whitmere in the 'Answer' of Whitmere to the Cross–Claim."

{¶ 12} However, the court determined that AT & T's cross-claim was barred by the statute of limitations found in R.C. 2305.10. According to the court, "AT & T's Counterclaim against Corn is for statutory entitlement by right of subrogation (O.R.C. 4123.93 and O.R.C. 4123.931) to recover from Corn the damages Corn may receive from Defendant Whitmere, to the extent of the benefits that AT & T, Corns' employer, paid to Corn or for the benefit of Corn as a self insurer under the Workers' Compensation Act. Such benefits were paid as a result of injuries allegedly caused Corn by the negligence of Whitmere. The Court concludes that AT & T's Counterclaim may not stand alone but is dismissed without prejudice upon the dismissal of the Complaint without prejudice.

{¶ 13} "AT & T's Cross–Claim against Whitmere is a separate claim by AT & T for recovery from Whitmere for damages 'As a direct and proximate result of Defendant Whitmere's negligence as set forth in Plaintiff's Amended Complaint' for Corn's 'injur[y]' and medical and disability expenses."

{¶ 14} The court noted that R.C. 4123.931(H) confers a right of action upon AT & T to bring the cross-claim against Whitmere, a fact that neither Whitmere nor AT & T disputes. According to the court, "[w]hat is disputed is whether the two-year statute of limitations for actions for bodily injury as a result of tort negligence, applies to the filing of the action by AT & T, or * * * whether a four year statute of limitations applies." The court "conclude[d] that the AT & T Cross–Claim is an action for bodily injury with the limitations period for the action specified in R.C. 2305.10(A). That section is expressly excepted from applicability of the four-year statute of limitations specified in R.C. 2305.09(D).

{¶ 15} " * * *

{¶ 16} "The accident causing bodily injury to Corn occurred on or about August 24, 2004 according to the Amended Complaint, an allegation admitted in AT & T's Answer. AT & T's Answer, Counterclaim and Cross–Claim was filed on September 10, 2007, well after the expiration of the two-year statute of limitations specified in R.C. 2305.10(A). The Court conclude[s] that AT & T did not file its action within the applicable limitations period, and therefore it did not commence its action within the limitations period."

{¶ 17} The court further distinguished AT & T's cross-claim as one against a co-party arising out of the transaction that is the subject matter of the original action, noting that as such, it does not relate back to the August 23, 2006 filing of the complaint. According to the court, "[u]nder no construction of Civ.R. 3(A) or of the saving statute does the AT & T Cross–Claim against Whitmere have life or the potential for life; AT & T filed that separate claim well after the expiration of the statute of limitations for an action for bodily injury, and the claim is barred by the Statute of Limitations for an action for bodily injury * * *. Whitmere pleaded the statute as an affirmative defense to the Cross–Claim. The statute bars the Cross–Claim." The court accordingly dismissed AT & T's cross-claim with prejudice.

## I. AT & T's Direct Appeal

{¶ 18} AT & T asserts one assignment of error, as follows:

{¶ 19} "The trial court erred in granting summary judgment to Whitmere on AT & T's cross-claim."

{¶ 20} "Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. * * * Our review of the trial court's decision to grant summary judgment is de novo." *Cohen v. G/C Contracting Corp.*, Greene App. No. 2006 CA 102, 2007-Ohio-4888, 2007 WL 2743707.

{¶ 21} AT & T argues that its claim is analogous to a claim for loss of consortium, subject to the four-year statute of limitation, and alternatively, that its claim is based upon a liability created by a statute, subject to a six-year period of limitation. Whitmere responds that AT & T's claim is in the nature of a personal-injury action subject to a two-year statute of limitation, as the trial court concluded, and that AT & T can claim no rights of prosecution not available to Corn.

{¶ 22} Ohio's subrogation statute, R.C. 4123.931, provides: "(A) The payment of compensation or benefits pursuant to this chapter or Chapter 4121., 4127., or 4131., of the Revised Code creates a right of recovery in favor of a statutory subrogee against a third party, and the statutory subrogee is subrogated to the rights of a claimant against that third party. The net amount recovered is subject to a statutory subrogee's right of recovery. * * * (H) The right of subrogation under this chapter is automatic, regardless of whether a statutory subrogee is joined as a party in an action by a claimant against a third party. A statutory subrogee may assert its subrogation rights through correspondence with the claimant and the third party or their legal representatives. A statutory

subrogee may institute and pursue legal proceedings against a third party either by itself or in conjunction with a claimant. If a statutory subrogee institutes legal proceedings against a third party, the statutory subrogee * * * joins the claimant as a necessary party, or if the claimant elects to participate in the proceedings as a party, the claimant may present the claimant's case first if the matter proceeds to trial. If a claimant disputes the validity or amount of an asserted subrogation interest, the claimant shall join the statutory subrogee as a necessary party to the action against the third party."

{¶ 23} R.C. 2305.10(A), which sets forth the statute of limitations for personal-injury claims, provides that "an action for bodily injury * * * shall be brought within two years after the cause of action accrues. * * *."

{¶ 24} R.C. 2305.09(D) provides that "an action for any of the following causes shall be brought within four years after the cause thereof accrued: * * * (D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10, 2305.12, and 2305.14 of the Revised Code."

{¶ 25} R.C. 2305.07 provides: "Except as provided in sections 126.301 and 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."

{¶ 26} "[I]n determining which limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial." *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298. We agree with AT & T that the six-year period of limitation applies to its cross-claim against Whitmere, for the reasons that follow.

{¶ 27} "In order for a statutory cause of action to be 'an action * * * upon a liability created by statute' under R.C. 2305.07, that cause of action must be one that would not exist but for the statute. Any statutory 'modification, alteration or conditioning' of a common-law cause of action which falls short of creating a previously unavailable cause of action is not 'an action * * * upon a liability created by statute.'" *McAuliffe v. W. States Import Co., Inc.* (1995), 72 Ohio St.3d 534, 651 N.E.2d 957, at paragraph one of the syllabus. In other words, R.C. 2305.07 applies to AT & T's cross-claim if AT & T's rights as a statutory subrogee would not exist in the absence of R.C. 4123.931. We conclude that AT & T's cross-claim depends upon R.C. 4123.931.

{¶ 28} In *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 748 N.E.2d 1111, the Supreme Court of Ohio determined that the version of Ohio's subrogation statute then in effect violated Sections 2, 16, and 19, Article I of the Ohio Constitution. The prior version of the unconstitutional statute then became

effective. In subsequent litigation, employers seeking reimbursement for money paid on behalf of workers' compensation claimants had no right to subrogation, because, pursuant to *Holeton*, the subrogation statute violated equal-protection guarantees. See, e.g., *Giles v. Schindler Elevator Corp.* (2001), 146 Ohio App.3d 388, 766 N.E.2d 219; *Yoh v. Schlachter*, Williams App. No. WM–01–017, 2002-Ohio-3431, 2002 WL 1436033; *Modzelewski v. Yellow Freight Sys. Inc.*, 151 Ohio App.3d 666, 2003-Ohio-827, 785 N.E.2d 501.

{¶ 29} Following *Holeton*, the General Assembly enacted 2002 Sub.S.B. No. 227, which amended the subrogation provisions in R.C. 4123.93 and 4123.931, effective April 9, 2003. As Whitmere concedes, "The state of the law changed markedly with the enactment of Ohio Revised Code § 4123.93, et seq. in 2003. The statutes created *a right of subrogation* in favor of a self-insured employer." (Emphasis added.)

{¶ 30} While Whitmere relies upon several cases arising not in the context of Workers' Compensation, but in the context of insurance, we agree with AT & T that Whitmere errs "in analogizing subrogation in the workers' compensation system to subrogation arising from contract or equitable principles." A brief history of the development of the workers' compensation system will illustrate the difference between subrogation in that context and in the insurance context.

{¶ 31} "Prior to 1913, the employee's ability to receive compensation for work related-injuries was governed by the common law of torts. Although the principle of vicarious liability had long been recognized at common law, it was far more difficult for the injured worker to recover damages from his or her employer than it was for the stranger to the employment relationship. The injured employee was required to prove that the employer violated a duty of care owed specifically to employees. Even upon overcoming this hurdle, until 1911, the employee was faced with what became known as the 'unholy trinity of common-law defenses'—contributory negligence, the fellow servant rule, and assumption of risk. 102 Ohio Laws 529, Section 21–1. * * *

{¶ 32} "The common-law system proved incapable of dealing with the often devastating social and economic consequences of industrial accidents. It became undeniable that the tort system had failed as a regulatory device for distributing economic losses borne by injured Ohio workers and their families and that it should be replaced by a workers' compensation system in which those losses would be charged, without regard to fault or wrongdoing, to the industry rather than to the individual or society as a whole. * * *

{¶ 33} "Accordingly, Section 35, Article II[1] represents a social bargain in which employers and employees exchange their respective common-law rights

---

1. "For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment,

and duties for a more certain and uniform set of statutory benefits and obligations. Thus, in *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 433 N.E.2d 572, 577, we explained that the Workers' Compensation Act 'operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability.' * * * 'This compromise is the basic premise underlying the workers' compensation system.' Fulton, [Ohio Compensation Law (2d Ed. 1998) 4], Section 1.2." *Holeton,* 92 Ohio St.3d at 118–119, 748 N.E.2d 1111.

{¶ 34} In contrast, outside of the workers' compensation context, "[s]ubrogation interests have been found to arise both under contract and through equity. As stated in *Hawkins v. True N. Energy, L.L.C.,* Portage App. Nos. 2002–P–0098, 2002–P–0101, 2002–P–0102, 2004-Ohio-3341 [2004 WL 1433699]: ' "The right of an insurer to be subrogated to the right of the insured arises either from the right of conventional subrogation, that is subrogation by agreement between the parties, or equitable subrogation by operation of law. Conventional subrogation is premised on the contractual obligations of the parties, either express or implied. Contractual subrogation clauses in an insurance policy are controlled by contract principles, including those of interpretation of the contract language. * * * Equitable subrogation, on the other hand, arises when there is not agreement creating a contractual obligation to subrogate." ' Id., quoting *Erie Ins. Co. v. Kaltenbach* (1998), [130] Ohio App.3d 542, 546 [720 N.E.2d 597]." *Wilson v. Sanson,* Cuyahoga App. No. 87685, 2006-Ohio-6269, 2006 WL 3446213, ¶ 27.

{¶ 35} In the insurance context, subrogation "is the 'principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy.' Black's Law Dictionary (7th Ed. 1999) 1440. A subrogated insurer stands in the shoes of the insured-subrogor and has no greater rights than those of its insured-subrogor. * * * Further, where the insured's claim against a tortfeasor is based on negligence, the insurer's subrogated claim is also necessarily based on negligence, rather than on the insurance

laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease."

contract. * * *. Consequently, where an insured's tort claim is subject to a statute of limitations, so too is the insurer's subrogation claim." *Nationwide Mut. Ins. Co. v. Zimmerman,* Stark App. No. 2004 CA 00007, 2004-Ohio-7115, 2004 WL 3038032, ¶ 16. In other words, in the insurance context, subrogation is derivative in nature, and no new cause of action is created. R.C. 4123.931, on the other hand, provides for an independent subrogation claim that is in fact a new cause of action.

{¶ 36} While Whitmere relies upon *New Artesian v. Stiefel* (Feb. 14, 2000), Stark App. No. 1999CA00163, 2000 WL 222110, a workers' compensation case, for the proposition that "claims for recovery for an injury to a person are governed by the two year statute of limitations for personal injury, regardless of the theory upon which the claim is brought," we conclude that *New Artesian* is distinguishable. In *New Artesian,* Herb Strait, an employee of the self-insured New Artesian, was injured while assisting the employees of Stiefel, who was a tenant on New Artesian's real estate. New Artesian paid Strait over $396,709 for his injuries. On June 27, 1996, Strait and his wife sued Stiefel, naming New Artesian as a party-defendant because of its subrogation right. New Artesian was later realigned as a party-plaintiff. On October 16, 1997, the Straits dismissed their complaint pursuant to Civ.R. 41(A). New Artesian filed a motion to have the Straits rejoined in the suit, its motion was denied, and the matter was ordered closed via judgment entry.

{¶ 37} New Artesian then filed suit against the Straits and Stiefel, alleging in part Stiefel's negligence and asserting its right to subrogation. Upon the Straits' motion and Stiefel's failure to respond, the trial court dismissed New Artesian's negligence claim for failure to state a claim against the Straits. Subsequently, the entire complaint was dismissed.

{¶ 38} On appeal, the court analyzed "the issue of the subrogation rights for self-insured employers." Pursuant to the version of the subrogation statute then at issue, which was in effect only from October 20, 1993 until September 1995, "[t]he right of subrogation which inures to the benefit of the * * * self-insuring employer under division (B) of this section is automatic and applies only if the employee is a party to an action involving the third-party tortfeasor." In other words, New Artesian was entitled to subrogation "only where Herbert Strait is a party to the action." The court determined that the trial court did not err in holding that New Artesian failed to state a claim upon which relief could be granted.

{¶ 39} New Artesian also asserted that the trial court committed error by applying the two-year statute of limitations for personal injury and not a 15–year statute of limitations, since the majority of its claims pertained to alleged violations of the lease between New Artesian and Stiefel. Citing *Hambleton v.*

*R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298, and *Andrianos v. Community Traction Co.* (1951), 155 Ohio St. 47, 49, 44 O.O. 72, 97 N.E.2d 549, the Fifth District determined, "[T]he purported contract violation claims relate directly to Herbert Strait's injuries, and the monetary prayer for relief is virtually identical to the amount appellant seeks as an asserted subrogee in its tort claim." Accordingly, the court concluded, "[T]he 'essence of the action' brought by appellant does not sound in contract as suggested. * * * The trial court did not err in applying a two-year statute of limitation in this regard."

{¶ 40} As AT & T asserts, New Artesian's rights were distinct from those conferred by the current subrogation statute; New Artesian did not have an automatic statutory right to sue Stiefel unless Strait was a party to the action. In other words, under the 1993 version of the statute, New Artesian lost all of its rights if the injured employee settled with the tortfeasor. As AT & T correctly asserts, since the self-insured employer was wholly dependent upon the employee's lawsuit, "whatever statute of limitations applied to the employee would apply to the employer." Such is not the case under the liability scheme of the current statute, under which Corn cannot bargain away the rights of AT & T to be subrogated to third-party proceeds recovered by Corn.

{¶ 41} In sum, in the worker's compensation context, AT & T has accepted liability without fault to Corn, Corn's recovery from AT & T is limited to the benefits under R.C. 4123.931 et seq., AT & T has relinquished its common-law defenses, and the subrogation statute is meant to encourage Corn to seek reimbursement for his damages from the party responsible so that AT & T may be reimbursed out of any recovery made by Corn. Far from a modification of a common-law cause of action, AT & T's right to reimbursement from Whitmere is nonexistent but for the statute. Accordingly, AT & T's claims are governed by the six-year statute of limitation.

{¶ 42} Having concluded that the trial court erred in granting summary judgment in favor of Whitmere and in dismissing AT & T's cross-claim based upon the two-year statute of limitations, AT & T's sole assignment of error is sustained. The judgment of the trial court is reversed as to AT & T's claims, and the matter is remanded.

II. Whitmere's Cross–Appeal

{¶ 43} Whitmere asserts one assignment of error as follows:

{¶ 44} "The trial court erred when it failed to dismiss the claims of Joseph Corn with prejudice."

{¶ 45} First, Whitmere argues, "The key to the Appellant's ability to re-file its claims against the Appellee * * * is whether Joseph Corn may timely file new claims in this matter." According to Whitmere, "a subrogee may avoid the

expiration of a statute of limitations by joining in a lawsuit timely commenced by the subrogor." AT & T responds that "the issue of relation back of a 'potential' claim by AT & T is not properly before this court." We agree with AT & T regarding its ability to make a future claim as Corn's subrogee. The issue is not before us.

{¶ 46} Second, Whitmere asserts that the trial court should have dismissed Corn's claims with prejudice. The dismissal of a complaint without prejudice is not a final, appealable order. *Ebbets Partners, Ltd. v. Day*, 171 Ohio App.3d 20, 2007-Ohio-1667, 869 N.E.2d 110, ¶ 11, quoting *Stafford v. Hetman* (June 4, 1998), 8th Dist. No. 72825, 1998 WL 289383, *1 (" '[a] dismissal without prejudice relieves the court of all jurisdiction over the matter, and the action is treated as though it had never been commenced' "). There being no final, appealable order, Whitmere's cross-appeal is dismissed.

Judgment accordingly.

GRADY and FROELICH, JJ., concur.

WILLIAM H. WOLFF JR., J., retired, of the Second District Court of Appeals, sitting by assignment.